UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARMANDO STUART, | CASE NO. 2:26-cv-01083-LK |
| Plaintiff, | ORDER REGARDING SECOND MOTION FOR TEMPORARY RESTRAINING ORDER |
| v. | |
| SHORELINE COMMUNITY COLLEGE et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Armando Stuart's Renewed Emergency Motion for Temporary Restraining Order. Dkt. No. 8. For the reasons set forth below, the Court denies the motion.

## I.    BACKGROUND

Plaintiff Armando Stuart is a student at Shoreline Community College participating in a "state-approved Worker Retraining Program." Dkt. No. 5 at 3. He contends that after his "highly sensitive, protected communicable medical status was unlawfully disclosed in the classroom setting," Defendants retaliated against him and jeopardized his Washington Employment Security

ORDER REGARDING SECOND MOTION FOR TEMPORARY RESTRAINING ORDER - 1

Department Training Benefits. *Id.* at 2. He filed his proposed complaint on March 27, 2025, Dkt. No. 1-1, alongside a motion for a temporary restraining order ("TRO"), Dkt. No. 2. Magistrate Judge Brian A. Tsuchida granted his motion to proceed in forma pauperis, Dkt. Nos. 1, 4, and the clerk filed his complaint, Dkt. No. 5. On March 31, 2026, the Court denied Stuart's motion for a TRO because he had not served Defendants or given them notice of the motion, and his delay in bringing the motion undermined his claimed emergency. Dkt. No. 6.

On April 7, 2026, Stuart filed this second motion for a temporary restraining order. Dkt. No. 8. According to Stuart, on March 26, 2026, "Academic Advisor Joyce Fagel dropped [his] active enrollment to 10 credits, deliberately pushing [him] below [his] state funding threshold." Dkt. No. 8-1 at 3 (citation omitted). "The following day, . . . the administration bypassed [his] mandatory Student Accessibility Services (SAS) accommodations" and enrolled him in an evening session of one class and an "asynchronous online format" for another class. *Id.*; *see also* Dkt. No. 8-9 at 9–10. In response to Stuart's complaint about the classes, Ms. Fagel reminded him in an e-mail that the two of them completed the enrollment together, their focus was on space constraints as there were "very few choices" available, and Stuart did not raise a concern about the class time during that enrollment process. Dkt. No. 8-8 at 6, 9.

Stuart contends that his "documented disabilities strictly require structured, synchronous, daytime instruction," and he "cannot physically or medically attend the 6:00 PM evening section or succeed in an asynchronous format." Dkt. No. 8-1 at 3.  According to Stuart, he told the college on March 30, 2026, that because of his "PTSD/ADHD," he "require[s] a daytime, in-person/hybrid schedule" as an accommodation. Dkt. No. 8-8 at 13. He also states that because he is "medically barred from attending the unauthorized sections, the College's Canvas system is currently and automatically executing '0.0' failing grades against [his] academic transcript." Dkt. No. 8-1 at 3.

ORDER REGARDING SECOND MOTION FOR TEMPORARY RESTRAINING ORDER - 2

Stuart also avers that "[f]rom April 1 through April 5, 2026, administrator Michael Boehm refused to process [his] critical Department of Social and Health Services (DSHS) verifications, actively threatening [his] state funding while instructing [him] to buy books for the inaccessible class." *Id.* (citing Dkt. No. 8-6 at 13–15, in which a college employee explains other options if he "do[es] not feel comfortable . . . signing DSHS Participant Reimbursement Forms," and *id.* at 39, to which Stuart attaches his DSHS Participant Reimbursement Form). Stuart avers that this "academic sabotage and lockout from [his] required schedule is actively degrading [his] psychiatric stability." *Id.* at 4.

Stuart's motion for a TRO seeks an order requiring the college to immediately do the following:

- reverse his enrollment in the "6:00 PM evening section of BIOL& 260 and the asynchronous online section of BIOL& 170," Dkt. No. 8-14 at 2;

- restore "medically accessible, synchronous, daytime instructional sections for his foundational science coursework, consistent with his documented medical requirements and previous ADA accommodations," *id.*;

- "expunge any failing grades (including '0.0' scores), missed assignments, or academic penalties generated in the Canvas or ctcLink systems during the period of [his] unauthorized, inaccessible enrollment," *id.* at 3;

- "execute, process, and release all necessary Department of Social and Health Services (DSHS) and Employment Security Department (ESD) compliance and enrollment verifications to prevent the retaliatory termination of [his] State Training Benefits," *id.*; and

ORDER REGARDING SECOND MOTION FOR TEMPORARY RESTRAINING ORDER - 3

- "[c]ease and desist from any further unauthorized administrative overrides, retaliatory schedule tampering, or interference with [his] state funding and academic progression," *id.*

Stuart filed a certificate of service alongside this motion, stating that he e-mailed "notice" of the motion to the Washington State Attorney General's Office and various educators at Shoreline Community College. Dkt. No. 8-15 at 2. The notice informed the recipients that the motion and supporting documents would be filed in the Court's electronic filing system. *Id.*

## II.   DISCUSSION

### A.   Legal Standard

Federal Rule of Civil Procedure 65 empowers the court to issue a TRO. Fed. R. Civ. P. 65(b). Like a preliminary injunction, a TRO is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (the standards applicable to TROs and preliminary injunctions are "substantially identical"). The Court will not "mechanically" grant an injunction for every violation of law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Instead, plaintiffs seeking a TRO must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. The mere "possibility" of irreparable harm is insufficient; instead, the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22.

### B.   Stuart is Not Entitled to Emergency Relief without Notice

As with his prior motion for a TRO, Stuart has again failed to provide notice of this motion to Defendants, and has thus again failed to comply with Federal Rule of Civil Procedure 65 and Local Civil Rule 65. His notice to them that he would file something in the Court's electronic filing

ORDER REGARDING SECOND MOTION FOR TEMPORARY RESTRAINING ORDER - 4

system—without transmitting copies to them—is not sufficient to satisfy those rules. Dkt. No. 8-15. Because Defendants have not yet appeared, they do not receive notice of documents filed in this case. For the reasons set forth in the Court's prior order, Dkt. No. 6 at 2–4, the Court denies this motion based on the failure to provide notice to Defendants.

Even considering the merits, Stuart has not shown that he is likely to succeed on the merits. Stuart's motion is based on his allegation that the college has violated the Americans with Disabilities Act ("ADA") by enrolling him in evening and asynchronous classes that are "inaccessible" to him based on his PTSD and ADHD. Dkt. No. 8 at 2. However, he does not submit any evidence to support his contention that he is "physically and medically barred from accessing" those classes. *Id.* The Court has no obligation to scour the record for evidence that might support his position. *See, e.g.*, *Est. of Rowland v. King Cnty.*, No. 2:24-cv-01240-LK, 2025 WL 821862, at *5 (W.D. Wash. Mar. 14, 2025) (collecting cases); *see also Ramsey v. Muna*, 819 F. App'x 505, 507 (9th Cir. 2020) (courts "are not like pigs, hunting for truffles buried in briefs[,] and cannot manufacture arguments for a [litigant]" (citation modified)).

Stuart has filed a letter from Wesley Wendle, PA-C CAQ-PSYCH, who lists Stuart's ADHD and a "stressor-related disorder." Dkt. No. 8-13 at 3. Mr. Wendle notes the stressors that Stuart reported to him, and opines that "such stressors can reasonably exacerbate existing psychiatric conditions and interfere with cognitive performance, academic functioning, and overall wellbeing." *Id.* In addition, "[s]tabilization of external stressors and continuity of academic engagement are clinically beneficial to psychiatric recovery and functional improvement." *Id.* Notably, Mr. Wendle does not opine that Stuart requires in-person or daytime-only classes. Although Stuart contends that the college's Academic Advisor "admitted in writing to bypassing [his] confidential Student Accessibility Services (SAS) accommodations," Dkt. No. 8 at 3, the documents he cites do not support that assertion, Dkt. No. 8-8 at 6–11. Instead, those documents

ORDER REGARDING SECOND MOTION FOR TEMPORARY RESTRAINING ORDER - 5

reflect Stuart's unfounded assumption that his mental health conditions entitle him to his preferred schedule. *Id.* His assumption does not demonstrate a likelihood of success on the merits. Stuart has therefore failed to show a likelihood of success on his claim that the college has violated the ADA with his current course schedule or grades.

Nor has Stuart shown a likelihood of success on his claim that the college has violated the ADA by "dropping [his] active [course] load to 10 credits," Dkt. No. 8 at 2, because he is enrolled in 15 credits, Dkt. No. 8-9 at 9–10. Finally, Stuart has not shown a likelihood of success on his claim that the college caused the loss of his tuition funding, Dkt. No. 8 at 3, because his tuition "was paid as of 3/26 according to [school] records," although he does have an unpaid parking fine, Dkt. No. 8-6 at 11. Because Stuart has not shown a likelihood of success on the merits, the Court's inquiry ends. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (all four *Winter* elements must be satisfied); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." (citation modified)).

### III.  CONCLUSION

For the reasons explained above, the Court DENIES Stuart's motion for a temporary restraining order. Dkt. No. 8. The Court notes that it will summarily strike any future motion that fails to comply with applicable law, including but not limited to rules regarding service of, or notice to, opposing parties. Furthermore, Stuart is reminded that pro se litigants are subject to the same procedural requirements as other litigants. *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022). This entails strict compliance with applicable law, including but not limited to the Federal Rules of Civil Procedure and Local Civil Rules. *See Chan v. Ryan*, No. 22-CV-01796-LK, 2023 WL 197429, at *4 (W.D. Wash. Jan. 17, 2023). The Court refers Stuart to the Federal Rules of Civil Procedure, available at https://www.uscourts.gov/rules-policies/current-rules-practice-

ORDER REGARDING SECOND MOTION FOR TEMPORARY RESTRAINING ORDER - 6

procedure/federal-rules-civil-procedure, the Local Civil Rules for the Western District of Washington, available at https://www.wawd.uscourts.gov/sites/wawd/files/032725% 20WAWD% 20Local% 20Civil% 20Rules% 20-% 20Clean.pdf, and the Western District of Washington's guide for pro se litigants, available at https://www.wawd.uscourts.gov/representing-yourself-pro-se. Failure to comply with applicable laws, rules, or orders may result in sanctions up to and including dismissal of the case. *See Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (per curiam) (failure of pro se litigant to follow procedural rules justified dismissal of civil rights action); *DeLong v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990); *Boyd v. Int'l Union of Operating Eng'rs Loc. 701*, No. 2:25-CV-01225-LK, 2026 WL 74085, at *1 (W.D. Wash. Jan. 9, 2026) (dismissing pro se plaintiff's case with prejudice for failure to abide by court orders).

Dated this 8th day of April, 2026.

Lauren King
United States District Judge

ORDER REGARDING SECOND MOTION FOR TEMPORARY RESTRAINING ORDER - 7