UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARMANDO STUART, | CASE NO. 2:26-cv-01083-LK |
| Plaintiff, | ORDER DENYING THIRD MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING MOTION TO SEAL |
| v. | |
| SHORELINE COMMUNITY COLLEGE et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Armando Stuart's Consolidated Renewed Emergency Motion for Temporary Restraining Order, Dkt. No. 22, and his "LCR 5(g) Motion to Seal Unredacted Exhibit 11," Dkt. No. 23. Defendants oppose the motion. Dkt. No. 26.[1] For the reasons set forth below, the Court denies the motion for a temporary restraining order ("TRO"), Dkt. No. 22, and denies the motion to seal, Dkt. No. 23.

---

[1] Defendants note that this time, unlike with his prior two motions for temporary restraining orders, Stuart gave them notice of this motion. *Id.* at 1.

ORDER DENYING THIRD MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING MOTION TO SEAL - 1

## I.    BACKGROUND

Plaintiff Armando Stuart is a student in the Medical Laboratory Technology ("MLT") at Shoreline Community College ("SCC"). Dkt. No. 12 at 3, 5. Stuart filed his proposed complaint on March 27, 2025, Dkt. No. 1-1, alongside a motion for a temporary restraining order ("TRO"), Dkt. No. 2. Magistrate Judge Brian A. Tsuchida granted his motion to proceed in forma pauperis, Dkt. Nos. 1, 4, and the clerk filed his complaint, Dkt. No. 5. On March 31, 2026, the Court denied Stuart's motion for a TRO because he had not served Defendants or given them notice of the motion, and his delay in bringing the motion undermined his claimed emergency. Dkt. No. 6.

Stuart filed a second motion for a temporary restraining order on April 7, 2026. Dkt. No. 8. According to Stuart, on March 26, 2026, "Academic Advisor Joyce Fagel dropped [his] active enrollment to 10 credits, deliberately pushing [him] below [his] state funding threshold." Dkt. No. 8-1 at 3 (citation omitted). "The following day, . . . the administration bypassed [his] mandatory Student Accessibility Services (SAS) accommodations" and enrolled him in an evening session of one class and an "asynchronous online format" for another class. *Id.*; *see also* Dkt. No. 8-9 at 9–10. In response to Stuart's complaint about the classes, Ms. Fagel reminded him in an e-mail that the two of them completed the enrollment together, their focus was on space constraints as there were "very few choices" available, and Stuart did not raise a concern about the class time during that enrollment process. Dkt. No. 8-8 at 6, 9. The Court denied his second motion for a TRO because he failed to give Defendants the required notice of the motion and failed to demonstrate that he was likely to succeed on the merits. *See* Dkt. No. 9. Specifically, Stuart did not show that SCC violated the Americans with Disabilities Act ("ADA") with his current course schedule or grades. *Id.* at 6. Nor had he shown a likelihood of success on his claims that SCC violated the ADA by dropping his course load or causing the loss of his tuition funding, which was fully paid. *Id.*

ORDER DENYING THIRD MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING MOTION TO SEAL - 2

Stuart next filed an amended complaint. Dkt. No. 12. He contends that Defendants violated Title II of the ADA and Section 504 of the Rehabilitation Act by engaging in a Zoom "screening" call with him and blocking him from daytime coursework. *Id.* at 6, 11. He also alleges that Defendants violated his Fourteenth Amendment due process rights by depriving him of property when it "blockaded [him] from his coursework." *Id.* at 11–12. In addition, Stuart contends that SCC retaliated against him in violation of the First Amendment by "fabriat[ing] a fraudulent financial debt," issuing a disciplinary threat, "rerouting [his] record demands to a GovQA portal," and conducting a deliberately deficient investigation of his complaints. *Id.* at 12–13. Finally, Stuart contends that SCC deprived him of his Fourteenth Amendment right to "informational privacy" by subjecting him to the Zoom call *Id.* at 13. Stuart's motion for a TRO seeks an order enjoining SCC from the following:

- "[t]ransmitting any 'Failure to Participate,' 'Unsatisfactory Progress,' or punitive 0.0 grade reports to the Washington State Employment Security Department (ESD), the Department of Social and Health Services (DSHS), or the Basic Food Employment and Training (BFET) program regarding [Stuart's] Spring 2026 academic standing, pending the resolution of [his] underlying Title II ADA claims and the completion of the federally mandated interactive process," Dkt. No. 22-2 at 2;

- "assessing, transferring, or collecting the fraudulently generated $1,925.05 BFET tuition charge or initiating any debt collection actions against [Stuart's] personal account for the unaccredited Spring 2026 quarter," *id.* at 2–3;

- "[e]xecuting any administrative academic drops, locking [Stuart] out of institutional digital learning systems (Canvas/ctcLink), or finalizing the punitive 0.0 grades issued between April 27 and May 7, 2026, pending the resolution of the underlying ADA claims," *id.* at 3;

ORDER DENYING THIRD MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING MOTION TO SEAL - 3

- "[t]ransferring, exporting, publishing, or migrating any of [Stuart's] Personally Identifiable Information (PII), Protected Health Information (PHI), or physical residential data to any internal, external, or third-party databases (including but not limited to GovQA or unsecured state oversight portals)" and requiring Defendants "to strictly observe [Stuart's] Address Confidentiality Program (ACP) protections in all institutional dealings," *id.*;[2] and

- "[u]tilizing the parallel State Board for Community and Technical Colleges (SBCTC) administrative inquiry (Complaint ID 1206) as a pretext to stay, toll, or delay discovery and proceedings in this federal litigation," *id.*

Stuart also seeks declaratory relief and compensatory and punitive damages. *Id.* at 14.

## II.    DISCUSSION

### A.    Legal Standard

Federal Rule of Civil Procedure 65 empowers the court to issue a TRO. Fed. R. Civ. P. 65(b). Like a preliminary injunction, a TRO is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (the standards applicable to TROs and preliminary injunctions are "substantially identical"). The Court will not "mechanically" grant an injunction for every violation of law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Instead, plaintiffs seeking a TRO must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at

---

[2] With respect to his personal information, Stuart also seeks an order enjoining "Defendants and their agents" from "demanding or mandating the unsecured transmission of [his] Protected Health Information (PHI) or Address Confidentiality Program (ACP) data outside of encrypted, court-approved channels." *Id.*

ORDER DENYING THIRD MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING MOTION TO SEAL - 4

20. The mere "possibility" of irreparable harm is insufficient; instead, the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22.

**B.      Stuart is Not Entitled to Emergency Relief**

As with his prior motions for emergency relief, Stuart has not shown that he is likely to succeed on the merits. The Court's prior order explained that he "failed to show a likelihood of success on his claim that the college has violated the ADA with his current course schedule or grades." Dkt. No. 9 at 6. To the extent that his current "renewed" motion seeks reconsideration of the Court's prior order, his motion is untimely. LCR 7(h)(2) (motions for reconsideration "shall be filed within fourteen days after the order to which it relates is filed"); Dkt. No. 9 (Court's prior order issued April 8, 2026); Dkt. No. 22 (current motion filed May 11, 2026).

In this motion, Stuart argues that he is likely to succeed on the merits for two reasons. First, he contends that "Defendants committed an unconstitutional deprivation of informational privacy under the Fourteenth Amendment" by exporting his unredacted residential address to "a vulnerable, public-facing third-party portal (GovQA) to execute a sham production of records." Dkt. No. 22 at 3–4. Stuart has not shown a likelihood of success on this issue or that he faces imminent irreparable harm absent a TRO. Instead, the documents he filed show that on March 12, 2026, Stuart requested records from SCC and referenced the Washington Public Records Act. Dkt. No. 22-5 at 16–17. In a March 26, 2026 email, SCC stated that it was not aware that Stuart had enrolled in the Address Confidentiality Program ("ACP") and asked if he was withdrawing his Public Records Request. *Id.* at 16. On April 24, SCC wrote to Stuart explaining the use of GovQA as a licensed records management system, and stating that "[u]se of that portal can be discontinued if you would like to withdraw your [Public Records Act request], and the distribution of records will be limited to those relevant to a [Family Educational Rights and Privacy Act ("FERPA")] records release." *Id.* at 29. On April 27, 2026, SCC offered to provide responsive documents on a

ORDER DENYING THIRD MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING MOTION TO SEAL - 5

memory stick. *Id.* at 30. Stuart did not file his responses, if any, to SCC's communications on this issue. These communications show that Stuart is not likely to face public disclosure of highly sensitive personal information. Even if Stuart's address is highly personal under these circumstances, *see generally Doe v. Bonta*, 101 F.4th 633 (9th Cir. 2024), SCC has offered options that would not use the GovQA portal to respond to his request.

Second, Stuart contends that he has shown a likelihood of success regarding "the unconstitutional deprivation of a protected property interest under the 14th Amendment Due Process Clause, effectuated via Title II ADA retaliation" because Defendants generated a "billing to the BFET program for $1,925.05." Dkt. No. 22 at 4. Stuart has not shown a likelihood of success or irreparable harm on this issue because he has not been deprived of any benefit, such as tuition funding. Instead, he avers that the school notified him of an *award* of such funding. *Id.* (citing Dkt. No. 22-5 at 32–35).[3] Because Stuart has not shown a likelihood of success on the merits, the Court's inquiry ends. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (all four *Winter* elements must be satisfied); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." (citation modified)).

## C.    The Court Denies the Motion to Seal

Stuart moves for permission to file an unredacted version of Exhibit II to his motion for a TRO because it "contains [his] highly sensitive, actual physical residential address[.]" Dkt. No. 23 at 2. He filed a redacted version of that document in the docket. Dkt. No. 22-8 at 3.

---

[3] Stuart's motion also contends that the "Washington State Board for Community and Technical Colleges (SBCTC) initiated a compromised parallel administrative intervention" and has emailed his protected data. Dkt. No. 22 at 3. The SBCTC is not a party to this action, so the Court does not consider these allegations further.

ORDER DENYING THIRD MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING MOTION TO SEAL - 6

Courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Accordingly, when a district court considers a sealing request, "a strong presumption in favor of access is the starting point." *Id.* (citation modified).

The Court denies Stuart's motion to file an unredacted copy of the document under seal because he has not shown that his residential address is relevant in this matter. In addition, Stuart appears to have included his address in his motion, Dkt. No. 23 at 2, undermining his claimed good cause or compelling reasons to keep that information under seal. Finally, because Stuart filed the sealed document without awaiting the Court's permission to do so, the Court strikes the irrelevant sealed document. Dkt. No. 27.

### III.  CONCLUSION

For the reasons explained above, the Court DENIES Stuart's motion for a temporary restraining order, Dkt. No. 22, and DENIES his "LCR 5(g) Motion to Seal Unredacted Exhibit 11," Dkt. No. 23. The Clerk is directed to strike docket entry 27. The Court further notes that Stuart has now filed three meritless motions for emergency relief. The Court may impose sanctions under Federal Rule of Civil Procedure 11(c), Local Civil Rule 11(c), and/or its inherent authority if he files any additional meritless motions. Such sanctions may include monetary sanctions, revoking his e-filing privileges, and/or dismissing the case.

Dated this 15th day of May, 2026.

*Lauren King*
_____
Lauren King
United States District Judge

ORDER DENYING THIRD MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING MOTION TO SEAL - 7